RWT 11 CV 3456

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 NOV 30 P 3:01

CLERK'S OFFICE
AT GREENBELT
BY ______ DEPUTY

UNITED STATES DISTRICT COURT
STATE OF MARYLAND

ANICA ASHBOURNE,
Plaintiff,

vs.

US DEPARTMENT OF THE TREASURY,
Timothy Geithner, Secretary
U.S. Department of the Treasury,
Internal Revenue Service (Global High Wealth), a component of the U.S. Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, DC 20220

Defendant

Case No.:

COMPLAINT

## COMPLAINT

Plaintiff brings this action for injunctive, declaratory, and monetary relief pursuant to the Privacy Act of 1974, as amended, 5 U.S.C. 552a *et seq.*

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to Privacy Act, 5 U.S.C. §552a and 28 U.S.C. §1331.

2. Venue in the United States District Court for the State of Maryland is proper under 5 U.S.C. §702 and 28 U.S.C. §1391(e), as the judicial district in which the plaintiff resides.

## PARTIES

3. Plaintiff is a resident of Capitol Heights, Maryland and is a United States citizen.

4. Defendant Department of the Treasury is an agency as defined by 5 U.S.C. §552a(1).

**BACKGROUND INFORMATION**

5. Plaintiff is a Tax Attorney/CPA, a former hearing officer, and a former Chief Audit Executive. She was hired by Global High Wealth, an industry group within the Internal Revenue Service, on June 21, 2010, but was wrongfully terminated on May 28, 2011 after Global High Wealth falsely accused her of lying about her sole proprietorship and about a temporary position that she held in 2001.

6. She believes that discrimination is the motive for her termination because Global High Wealth has intentionally and maliciously created, maintained, relied on, and disseminated records about the Plaintiff that are riddled with obvious errors.

7. Plaintiff contends that Donna Hansberry (Director), Donna Prestia (Assistant Director), and Thomas Collins (Territory Manager) intentionally and willfully failed to maintain and disseminate accurate records about her, and that they failed to collect from and record information provided by Plaintiff to ensure that her records were indeed accurate, relevant, timely, and complete.

8. Because their actions were intentional and willful, Plaintiff is seeking, *inter alia,* that the court take every action to refer these individuals to the Office of Special Counsel for disciplinary action and to the state so that it can begin proceedings to disbar Ms. Hansberry from the practice of law and to revoke the CPA licenses held by Ms. Prestia and Mr. Collins.

9. These violations of the Privacy Act have caused Plaintiff, *inter alia,* severe mental distress, lost wages, emotional trauma, extreme humiliation, and have jeopardized her present and future financial opportunities.

10. Ms. Hansberry, Ms. Prestia, and Mr. Collins ("Global High Wealth's responsible officials") intentionally and willfully failed to maintain and disseminate Plaintiff's records with such accuracy, relevance, timeliness, and completeness that was necessary to assure fairness in determining her qualifications, character, rights, opportunities and benefits in order to ensure that its determination would indeed be adverse to her.

11. Plaintiff also contends that Global High Wealth's responsible officials improperly disclosed Plaintiff's Privacy Act-protected information to unauthorized employees and to outside third parties.

**FIRST CAUSE OF ACTIN (PRIVACY ACT – FAILURE TO COLLECT FROM AND RECORD INFORMATION PROVIDED BY PLAINTIFF – 5 U.S.C. 552a(e)(2))**

12. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

13. Plaintiff complains of defendant and for a first cause of action alleges:

14. Global High Wealth's responsible officials never interviewed Plaintiff and they have refused to meet with her to discuss the evidence that led to Plaintiff's termination.

15. Plaintiff continues to assert that there is no evidence to support her termination because it is based solely on the discriminatory animus of these officials.

16. Although Plaintiff was not afforded these opportunities, it should be noted that these officials provided meeting opportunities to other employees to discuss their income tax returns and other employment-related matters.

17. Moreover, although Plaintiff had a lengthy interview with a background investigator, that individual either omitted or failed to accurately report statements made by Plaintiff and her professional references.

18. As a result, Plaintiff's agency file includes more than 87 factual errors and Plaintiff considers 58 of those to be serious in nature.

19. The investigator misquoted Plaintiff 42 times and her professional references 15 times in his report.

20. Although Plaintiff listed all of employers, the agency file indicates that Plaintiff worked for TIGTA but Plaintiff has never worked for TIGTA.

21. Because the investigator was unable to contact her neighbors, he assumed and reported that that Plaintiff had never had any social company at her residence.

22. Plaintiff has earned two highly-coveted executive positions. However, the investigator falsely reported that she was terminated from both of these appointments.

23. Rather than report that Plaintiff asserted that she resigned from a client engagement when she suspected that Thomas Johnson was engaged in the unauthorized practice of law and that the firm was performing questionable accounting practices, the agency file only maintains that Plaintiff was terminated in 2001 by this employer for being AWOL for three days.

24. Rather than report that Plaintiff asserted that she objected to being relegated to an entry-level auditor position (which was not the position that she was hired for) when she had been the head of an audit agency, the agency file only maintains that Plaintiff called an employee a liar during a meeting and could not work in a team environment.

25. Rather than report that Plaintiff asserted that she would not have accepted a position where she would be supervised by Jeffrey Dye, an employee whose previous experience had been as a stock boy at a Sears warehouse, the investigator only reported that Plaintiff was terminated after one month from her position.

26. The investigator did not accurately report that Plaintiff had in a private meeting accused Christine Shires, a subordinate employee and an inexperienced auditor, of lying for taking credit for work that was actually produced by Plaintiff.

27. There is evidence in the agency file too that Plaintiff's supervisors were influenced to change their opinions about Plaintiff from positive ones to negative ones.

28. The investigator reports too that Plaintiff discussed her military background with several references; but, Plaintiff has neither served in the military nor did she ever discuss that matter with any of the individuals that were interviewed by the investigator.

29. The investigator's report also fails to include, *inter alia,* Plaintiff's statements about Ashbourne & Company, her political appointments, and her work as a Tax Attorney.

30. Surprisingly, his report never even makes any reference to "sole proprietorship" or "political appointment".

31. Instead of reporting that Plaintiff had 13 business clients, the agency file characterizes her as having a shaky work history.

32. Moreover, her record includes legal determinations which are contrary to well-settled federal and state laws, including the Internal Revenue Code.

33. The investigator reported, for example, that Ashbourne & Company could not be a business because it did not have a business license and because the income was

reported under Plaintiff's social security number instead of under a business tax identification number.

34. However, sole proprietorships are not required to have business licenses or separate tax identification numbers.

35. Global High Wealth's responsible officials knew that the investigator's legal conclusions about her sole proprietorship were contrary to the Internal Revenue Code.

36. Although Plaintiff received a W-2 from most of her business clients, the investigator erroneously stated that she was not an "employee" of these companies.

37. However, the law provides that a company can only issue a W-2 to an "employee".

38. The investigator also reported that he interviewed two former supervisors of Plaintiff's, but he in fact never interviewed those individuals.

39. The investigator also claims that one of Plaintiff's professional references informed him that Plaintiff worked at a law firm that she volunteered to resign from before any major issues arose.

40. Not only does her professional reference deny making these statements, but Plaintiff has never worked for a law firm.

41. In another instance, the investigator quotes one of Plaintiff's professional references as stating that her former bosses, who were elected officials, granted Plaintiff extraordinary benefits after she was terminated.

42. Not only does Plaintiff's professional reference deny making those statements, but Plaintiff was neither terminated nor did she receive any extraordinary benefits.

43. Because of the numerous errors in her records, Plaintiff lost control over the information that was included in her file.

44. Plaintiff contends that Global High Wealth's responsible officials intentionally and willfully failed to collect information to the greatest extent practical from her because they knew that incomplete and inaccurate information would and did result in an adverse determination (i.e. her termination) regarding Plaintiff's rights, benefits, and privileges.

**Second Cause of Action (5 U.S.C. 552a(e)(5) – Privacy Act – Accuracy, Relevance, Timeliness, and Completeness Claims)**

45. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

46. Plaintiff complains of defendant and for a second cause of action alleges:

47. Plaintiff's termination was based on inaccurate and incomplete records.

48. But Global High Wealth's responsible officials knew that their intentional reliance on these defective records would be the proximate cause of Plaintiff's termination.

49. Global High Wealth's responsible officials intentionally failed to maintain all records related to Plaintiff in making any determination about her with such accuracy, relevance, timeliness, and completeness as was reasonably necessary to assure fairness to her in its determination.

**Third Cause of Action (United States Constitution, 5 U.S.C. §552a(b) – Privacy Act –Improper Disclosure Claims)**

50. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

51. Plaintiff complains of defendant and for a third cause of action alleges:

52. Before her discharge, Plaintiff became aware that unauthorized employees were told that Plaintiff would be terminated and these unauthorized employees were informed about the reasons for her termination.

53. There is also evidence in the file that suggests that the investigator disclosed Privacy Act-protected information about Plaintiff to unauthorized individuals.

54. Global High Wealth improperly and intentionally disclosed Privacy Act-protected information about Plaintiff to unauthorized employees and outside third parties and its actions adversely affected Plaintiff.

**Fourth Cause of Action (United States Constitution, 5 U.S.C. §552a(e)(6) – Privacy Act –Inaccuracy, Incompleteness, Relevancy, and Timeliness Claims)**

55. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

56. Plaintiff complains of defendant and for a fourth cause of action alleges:

57. Global High Wealth's responsible officials intentionally failed to make reasonable efforts to assure that her records were accurate, complete, timely, and relevant for agency purposes.

58. They improperly and intentionally disseminated inaccurate and incomplete information included in Plaintiff's records to unauthorized employees and to outside third parties.

59. Global High Wealth's responsible officials' dissemination of inaccurate and defamatory information about Plaintiff before her discharge to unauthorized employees was a willful and intentional violation of Plaintiff's privacy act rights and it adversely affected Plaintiff.

60. Global High Wealth persecuted Plaintiff by intentionally and willfully maintaining her records in a state that was grossly inaccurate, defamatory, and incomplete and then they disclosed the defamatory and inaccurate information to unauthorized employees and to outside third parties.

**WHEREFORE**, Plaintiff requests that the Court award her the following relief:

a) Expedite this action in every way pursuant to 28 U.S.C. §1657;

b) Declare that Global High Wealth violated the Privacy Act;

c) Declare that its actions were intentional and willful;

d) Refer Global High Wealth's responsible officials to the Office of Special Counsel for disciplinary action;

e) Refer Donna Hansberry to the state so that it can begin proceedings to disbar her from the practice of law

f) Refer Donna Prestia and Thomas Collins to the state so that it can begin proceedings to revoke their CPA licenses;

g) Refer Global High Wealth's responsible officials for criminal prosecution under 5 U.S.C. §552a(i)(1);

h) Order Global High Wealth to correct the factual inaccuracies and to redact the irrelevant data from Plaintiff's file;

i) Award Plaintiff actual damages, the exact amount of which is to be determined at trial;

j) Award Plaintiff monetary damages for lost wages, embarrassment, humiliation, mental distress, loss of life enjoyment, and trauma; and

k) Grant such other relief that the Court finds is just and proper

DATE: November 29, 2011

ANICA ASHBOURNE
7422 DRUMLEA ROAD
CAPITOL HEIGHTS, MD 20743
(240) 788-7712